IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2020

**STATE OF TENNESSEE v. JOHN KELLY GROSS**

**Appeal from the Criminal Court for Davidson County
No. 2017-A-212      Jennifer Smith, Judge**
_____

**No. M2019-01449-CCA-R3-CD**
_____

John Kelly Gross, Defendant, was convicted following a bench trial of one count of aggravated burglary and one count of vandalism. As a result, Defendant was sentenced to an effective sentence of six years. Defendant appealed, arguing that the evidence was insufficient to support the conviction for aggravated burglary. After a review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT L. HOLLOWAY, JR., JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, John Kelly Gross.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Samantha Dotson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted in February of 2017 with one count of aggravated burglary and one count of vandalism for acts that took place during an incident at the home of Lori Gross on November 11, 2016. Defendant waived a jury trial. At the bench trial, Ms. Gross testified that Defendant was her ex-husband. The couple was married for twelve years prior to their divorce in 2009. They had one son. Ms. Gross agreed that the marriage did not end amicably. She explained that Defendant had visitation with their

son, K.G.,[1] after the divorce and the parties "tried to make it work, but they had a bad visitation and [K.G.] refused to see [Defendant] anymore." After that "the Judge OK'd [K.G.] not having to see his father."

Ms. Gross explained that she did not have a good relationship with Defendant and that he harassed her and K.G. Defendant was diagnosed with schizophrenia and "became very irrational" after the diagnosis. Ms. Gross "lived in fear" and tried to "keep [Defendant] calm" but testified that Defendant would "call sometimes and just yell and scream."

On the night of November 11, Defendant called twice, screaming at her each time. Ms. Gross was in the computer room on the top floor of the split-level house. When she answered the flip-phone she was using, she "could tell it was [Defendant], but he was just screaming." She was unable to make out "any of the words" so she hung up. Defendant called back a few minutes later. The calls made her "nervous."

Approximately thirty to forty-five minutes later, Ms. Gross "heard the front door break down." She heard "the wood splitting" and heard Defendant "coming up the stairs." Defendant kicked the dog. The dog "yelped" and ran away. Defendant came down the hallway. Ms. Gross "ran out of the office to the bedroom on the right and got [her] gun" because she knew that it was Defendant and she was "scared."

Defendant came into the bedroom, and K.G. followed. Defendant tried to talk to K.G. who was "jumping, up and down, on the bed, yelling shoot him." Defendant was also yelling. At one point, Defendant yelled at Ms. Gross to shoot him. Eventually, K.G. calmed down and started talking to Defendant. Both Defendant and K.G. "sat down on the bed and were talking, calmly, with each other." Ms. Gross was "still nervous" and never put the gun down because she was afraid Defendant would attack her.

After Defendant and K.G. talked for a short while, the two walked to the living room and continued to talk. Defendant called 911 and told them "he had just located a missing child." Ms. Gross explained to the police that K.G. was not missing and that she had sole custody. When the police arrived, Defendant was arrested.

On cross-examination, Ms. Gross explained that Defendant was not a co-owner of the home.[2] She denied that Defendant assigned her power of attorney when he was

---

[1] According to Defendant, K.G. was born in 2001, so he was approximately eighteen years of age at the time of trial. We have chosen to identify him by his initials in the event that he was a minor at the time of his testimony.

diagnosed with schizophrenia. Ms. Gross admitted that Defendant was not yelling and screaming when he first entered the house and that Defendant did not threaten or place his hands on her at any time. In fact, Ms. Gross admitted that she had "very little fear" because she "was the one with the gun." On redirect examination, Ms. Gross explained that the final divorce decree granted her sole possession of the marital home.

K.G. testified at trial. K.G. recalled that he was in the office with his mother on the night of November 11 prior to the time that Defendant entered the house. Ms. Gross told K.G. that Defendant called. According to K.G., his mother seemed "nervous." About twenty minutes after Defendant called, they "heard a big, loud noise at the front door." K.G. and his mother went to the bedroom where Ms. Gross grabbed her handgun. Defendant came up the stairs to the bedroom. K.G. explained that Defendant was "[a]gitated" and "overall angry." K.G. was "scared" of his "mother getting[g] hurt." K.G. talked to Defendant, and Defendant calmed down. K.G. got Defendant to go into the living room before K.G. "went inside to the office to call the police and laid the phone down" without talking to dispatch. K.G. recalled that Defendant also called the police. K.G. admitted that Defendant gave him a hug and a kiss after he calmed down. Defendant also gave his mother's telephone number to K.G.

Officer William Durham of the Metro Nashville Police Department responded to the call at Ms. Gross's home and arrested Defendant.

Defendant testified that he was diagnosed with schizophrenia around the time that his son was born. Defendant granted his wife power of attorney when he was diagnosed, "just in case something happened" to him. Defendant claimed that Ms. Gross signed his name to "[a] refinancing [of the house] with J.P. Chase Morgan."

Defendant explained that he was at a restaurant on the night of the incident when an old friend came in and told him he had a "debilitating disease." Defendant "started thinking about how short life is" and that he had not seen his son in a long time. He called his ex-wife because he wanted to talk to his son. Defendant recalled that Ms. Gross hung up on him so he "called a cab" to take him to the house. Defendant claimed that he was not certain that Ms. Gross and K.G. still lived at the house because he knew the "mortgage was going under foreclosure." Defendant arrived and "knocked on the neighbor's door" before he went to Ms. Gross's house. Defendant explained that he and the neighbor were not on good terms and that he "wanted to avoid any confrontation."

---

[2] Counsel for Defendant insisted that he sent a subpoena duces tecum to Ms. Gross to bring mortgage documents, refinancing documents, foreclosure notice, etc. Ms. Gross denied receiving the subpoena. Counsel for Defendant eventually conceded that Defendant "was not authorized to be [at the house] that night" but argued that if Defendant was a co-owner of the house he could "certainly destroy his own front door."

The neighbor was not home.  Defendant did not see any lights on at the house where he thought Ms. Gross and K.G. still lived.  He knocked on the door.  Defendant admitted that he kicked in the front door.  He saw the dog, a pit bull, at the top of the stairs behind a gate.  Defendant "kicked the gate over" and the dog ran past his leg and outside the house.  Defendant was "determined" to see his son.  Defendant was shocked with how mature his son had gotten.  They "sat down on the mattress" and Defendant wrote down K.G.'s grandmother's telephone number as well as a cousin's telephone number.  After talking for a bit, K.G. and Defendant walked outside.  Defendant called the police and told him that he "found a missing child."  Defendant claimed that his purpose in going to the house was to see his son.  Defendant could not recall if he was taking his medication at the time of the incident.

At the conclusion of the trial, the judge found Defendant guilty on both counts of the indictment.  At a sentencing hearing, Defendant was sentenced to an effective sentence of six years.  Defendant filed a motion for new trial.  The trial court denied the motion and Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant challenges the sufficiency of the evidence to support his conviction for aggravated burglary.  Defendant does not challenge his vandalism conviction.  Specifically, he claimed that there was "no evidence of felonious intent in the Defendant's entrance of the house; he committed no theft or felony after entry; he possessed no weapon . . . ; there was no personal injury to any of the occupants of the house; [and] though his ex-wife [ ], may have been frightened, she was not harmed nor was she assaulted or touched in any way."  Additionally, Defendant claims that the trial court should have considered a charge of aggravated criminal trespass.  The State, on the other hand, argues that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).  The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).  As such, this Court is precluded from re-weighing or reconsidering the evidence when

evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, in a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Here, Defendant was convicted of aggravated burglary. Aggravated burglary occurs when, "without the effective consent of the property owner," a "person enters a habitation with the intent to commit a felony, theft, or assault." T.C.A. §§ 39-14-402(a)(1), -403(a). A house is a "habitation." T.C.A. § 39-14-401(1)(A). An assault is committed when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101(a)(2). A person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result. T.C.A. § 39-11-302(a). A person acts knowingly with respect to the nature of the conduct or to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. T.C.A. § 39-11-302(b).

The evidence at trial, in a light most favorable to the State, indicated Defendant was diagnosed with schizophrenia during his marriage to Ms. Gross. Defendant and Ms. Gross were divorced. Defendant called Ms. Gross two times prior to coming to her home on the evening of November 11. Defendant kicked down the front door, entering the home without her permission, and came up the stairs. Ms. Gross was "afraid" Defendant would attack her so she grabbed her gun before Defendant entered the room where she and her son were standing. Defendant testified that he only wanted to see his son.

On appeal, Defendant seems to argue that a conviction for aggravated burglary required him to commit a felony and that the only assault proven by the State at trial was simple assault, a misdemeanor. To the contrary, a conviction for aggravated burglary is proven if a defendant enters a habitation "with intent to commit a felony, theft or assault." T.C.A. § 39-14-402(a)(1). Moreover, Defendant's intent can be established

- 5 -

through circumstantial evidence. *See State v. Reginald Dewayne Terry*, No. M2011-01891-CCA-R3-CD, 2012 WL 5873518, at *10 (Tenn. Crim. App. Nov. 19, 2012) (citing *State v. Burkely*, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990). The trial court heard the evidence, assessed the credibility of the witnesses, and concluded that Defendant entered the residence with the intent to commit an assault inside, despite his testimony to the contrary. As we have noted on many occasions, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *Pruett*, 788 S.W.2d at 561. The evidence was sufficient to support the conviction for aggravated burglary. As the trier of fact, the trial court needed not to consider the offense of criminal trespass after it determined the proof was sufficient to support a conviction for aggravated burglary. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE